# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KIMBERLY M. SCHOENE**, | Case No. 3:22-cv-1568-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **SPIRIT AIRLINES, INC.**, | |
| Defendant. | |

Kimberly M. Schoene, Plaintiff, *pro se*.

Aaron D. Bigby, NORTHCRAFT BIGBY PC, 819 Virginia St., Ste. C-2, Seattle, WA 98101.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

   Kimberly M. Schoene, proceeding *pro se*, brings this action against Spirit Airlines, Inc.

(Spirit), alleging claims for intentional infliction of emotional distress, breach of contract, and

discrimination under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a. Plaintiff alleges

that Defendant breached its contract and discriminated against Plaintiff by denying Plaintiff

transport on its airline based on Plaintiff's "personal appearance." Plaintiff self-describes as

having many visible tattoos, piercings, and pink hair.

Defendant moves for judgment on the pleadings. ECF 12. Defendant argues that Plaintiff's complaint should be dismissed because Plaintiff's causes of action are time-barred by the contract between the parties and also preempted by federal law. In the alternative, Defendant argues that Plaintiff's actions fail as a matter of law because: (1) an airline and its airplanes and boarding gates are not "place[s] of public accommodation" under Title II of the Civil Rights Act; (2) Plaintiff is not a member of a protected class as defined under federal civil rights law; and (3) the facts alleged do not give rise to a claim for intentional infliction of emotional distress. Defendant also moves to stay discovery until after the Court resolves the pending motion for judgment on the pleadings. ECF 15.

Plaintiff filed a response to Defendant's motion for judgment on the pleadings, along with a declaration, ECF 20, and a motion to allow a supplemental declaration, ECF 21. Plaintiff also filed a motion requesting permission to file a "rebuttal" to Defendant's reply, ECF 23, which the Court construes as a surresponse and grants permission to file.[1] For the reasons explained below, the Court grants Defendant's motion for judgment on the pleadings, grants Defendant's motion to stay discovery, and denies Plaintiff's motion to file a supplemental declaration.[2]

---

[1] Plaintiff has moved for leave to file a rebuttal to Defendant's arguments stated in its reply. ECF 23. Local Rule (LR) 7-1(e)(3) states that "[u]nless directed by the Court, no further briefing is allowed" beyond the filing of the moving party's reply brief. The Local Rules do not require good cause. *See Brooks v. Agate Res., Inc.*, 2018 WL 4431270, at *3 (D. Or. Sept. 17, 2018). Based on Plaintiff's *pro se* status, combined with the fact that Defendant's pending motion could dismiss the entirety of Plaintiff's case, the Court grants Plaintiff leave to file her rebuttal as a surresponse.

[2] Notwithstanding Defendant's request for oral argument, the Court does not believe that oral argument would help resolve the pending motion. *See* LR 7-1(d)(1).

**STANDARDS**

**A.  Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings is brought under Rule 12(c) of the Federal Rules

of Civil Procedure. Rule 12(c) allows a party to move for judgment on the pleadings after the

pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). "Analysis under

Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a

court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff

to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th

Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)). Thus, in a

Rule 12(c) motion a court "must accept all factual allegations in the complaint as true and

construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581

F.3d 922, 925 (9th Cir. 2009).

Dismissal for failure to state a claim under Rule 12(b)(6) "is proper if there is a 'lack of a

cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri

v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). In addition, "to survive a motion to

dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to

relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Cafasso, United States ex rel. v.

Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (*Iqbal* standard applies to

review of Rule 12(c) motions).

Although Rule 12(c) makes no mention of leave to amend, courts have discretion to do

so. *Carmen v. S. F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), *aff'd*, 237 F.3d

1026 (9th Cir. 2001). Indeed, in *Harris v. County. of Orange*, the Ninth Circuit affirmed a district

court's dismissal under Rule 12(c) but reversed for failing to grant leave to amend. 682 F.3d

1126, 1131, 1134-35 (9th Cir. 2012). Under Rule 15(a), courts should "freely" grant leave to

amend "when justice so requires," and absent "undue delay, bad faith or dilatory motive on the

part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to

the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182

(1962). The court should grant leave to amend "even if no request to amend the pleading was

made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation marks omitted).

**B.  *Pro Se* Litigants**

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and

afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th

Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon

Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is

absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice

of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."

*Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original)

(quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint

must contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." This standard "does not require 'detailed factual allegations,'" but does demand "more

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a court must accept as

true all well-pleaded factual allegations in a complaint, that doctrine is not applicable to legal

conclusions. *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## C.  Consideration of Extraneous Materials

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint . . . ." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (stating that courts ruling on a motion to dismiss may not consider "extraneous materials"). If "matters outside the pleading are presented to and not excluded by the court," the court must treat the motion as a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d). The court may consider facts beyond the four corners of the complaint in only two circumstances: when documents are incorporated into the complaint by reference, or when there are matters of which a court may take judicial notice under Rule 201 of the Federal Rules of Evidence. *See Khoja*, 899 F.3d at 998; *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). When a court takes judicial notice of a public record under Rule 201, a court must analyze whether the *facts* in the document qualify for judicial notice, because even if "the document itself is susceptible to judicial notice [that] does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999.

The incorporation by reference doctrine is "a judicially-created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. This is to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions that weaken—or doom—their claims." *Id.* "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). A court "may treat such a document as part of the complaint, and

thus may assume that its contents are true for purposes of a motion to dismiss . . . ." *Ritchie*, 342

F.3d at 908. The Ninth Circuit has cautioned, however, that "the doctrine is not a tool for

defendants to short-circuit the resolution of a well-pleaded claim." *Khoja*, 899 F.3d at 1003.

## BACKGROUND

Plaintiff is a hair stylist who describes her personal appearance as "alternative." Compl.

¶¶ 71, 52. She is a white woman who wears many tattoos, long pink hair with half of her head

shaved, and multiple piercings. *Id.* ¶¶ 52-55. Plaintiff has flown on commercial airplanes many

times in her life and has never had issues boarding a flight except with Spirit. *Id.* ¶ 69.

Plaintiff alleges that on December 20, 2021, she purchased tickets for a flight with Spirit.

*See id.* ¶ 152. The flight was to occur on January 3, 2022, and take Plaintiff from Las Vegas,

Nevada to Portland, Oregon. *Id.* ¶ 101. Despite Plaintiff arriving 15 minutes early for her January

3rd flight, Spirit closed the plane's doors and did not allow Plaintiff and her friend to board. *Id.*

¶ 106. Plaintiff was rebooked for the next day and spent the night at a hotel. *Id.* ¶¶ 108-09.

The incident relevant to this lawsuit took place the following day, January 4, 2022.

Plaintiff and her friend returned to the Las Vegas airport and proceeded to the boarding gate with

sufficient time to board the plane. *Id.* ¶¶ 110-11. In early 2022, many public places had

COVID-19 restrictions and masking rules, with which Plaintiff states she generally complied. *Id.*

¶ 99. Plaintiff had bought a milkshake and was drinking it when she approached the ticket

counter. *Id.* ¶ 114. As a result, Plaintiff's mask was hanging from her ear rather than covering her

mouth. *Id.* Defendant's employee at the ticket counter "yelled" at Plaintiff to put on her mask. *Id.*

¶¶ 116, 118. Plaintiff quickly complied. *Id.* ¶ 119. Defendant's employee then shut the doors to

the airplane. *Id.* ¶ 121. A verbal altercation began, involving multiple employees of Defendant,

during which Plaintiff's ticket was torn in half and her seat was given to a stand-by passenger.

*See id.* ¶¶ 122-33. Plaintiff asserts that she remained calm and did not raise her voice, *id.* ¶ 166,

yet Plaintiff was not allowed to board the flight. *Id.* ¶ 133. Plaintiff alleges that Defendant's employee singled out and became aggressive toward Plaintiff and her friend because of their visible tattoos. *Id.* ¶ 20.

After the altercation, and unable to book another flight, Plaintiff rented a car and drove home to Portland. *Id.* ¶¶ 137-38. Upon arriving in Portland, Plaintiff encountered additional delays retrieving her checked luggage from Spirit. *Id.* ¶¶ 140-43. Spirit refused to refund Plaintiff and placed her on a "no-flight" list. *Id.* ¶ 23. The long drive caused Plaintiff various physical problems that required medical treatment and affected her ability to work. *Id.* ¶¶ 146-51.

Plaintiff filed this lawsuit against Spirit on October 17, 2022. Plaintiff seeks monetary damages related to the expenses of her alternate transport, compensation for physical injuries, and lost profits for missed hair appointments and lost work. *Id.* ¶¶ 181-89. She also seeks non-economic damages for pain, mental suffering, emotional distress, humiliation, aggravation of anxiety and post-traumatic stress disorder, inconvenience, and interference, among others. *Id.* ¶ 235. Finally, Plaintiff requests a "declaratory judgment" from the Court to order Defendant to comply with a list of requests, including instituting anti-discrimination policies and issuing a public apology.[3] *See id.* ¶ 238.

---

[3] Although Plaintiff labels her requested relief as a declaratory judgment, a declaratory judgment is where the Court simply declares the rights or obligations of the parties, such as declaring what a clause in the contract means and whether one party breached the contract. Plaintiff's request that the Court order Defendant to engage in certain actions is a request for a mandatory injunction.

## DISCUSSION

### A.  Time Limitations in the Contract of Carriage

Plaintiff's complaint alleges that Defendant breached its Contract of Carriage (COC) and otherwise references the COC.[4] Defendant seeks to incorporate Spirit's COC by reference into the complaint and have the Court consider the document at this stage of the proceedings. *See Khoja*, 899 F.3d at 1002. Defendant also seeks to bind Plaintiff to the terms of the COC, specifically Article 13.3, which is generally referenced by Plaintiff in her complaint. Defendant argues that Plaintiff's alleged causes of action are time-barred by this section of the COC.

Article 13.3 of the COC provides that litigants have six months to file a claim against Spirit:

> 13.3 Time Limit – No legal action may be brought by a passenger against Spirit or its directors, officers, employees or agents unless commenced within six (6) months from the date of the alleged incident.

ECF 14-2 at 48. Defendant asserts that the six-month window passed before Plaintiff filed her complaint, and therefore her claims should be dismissed.

Plaintiff responds that she has alleged that Defendant wrongfully prevented her from boarding her rebooked flight on January 4, 2022. *See* Compl. ¶ 110. But Plaintiff did not file her lawsuit until October 17, 2022, more than six months after that incident. *See id.* ¶ 244 (signed and dated October 17, 2022).[5] If Plaintiff is bound by the COC, applying the terms of Article 13.3 would bar Plaintiff's claims.

---

[4]  Plaintiff discusses or quotes various articles contained in the COC in support of her cause of action alleging breach of the COC, *see* Compl. ¶¶ 152-180, including Article 13.3, whose "time limits" Plaintiff alleges "are not applicable." *Id.* ¶ 179.

[5] Plaintiff alleges that she filed a "complaint" with Spirit and relevant federal agencies on June 28, 2022. *See* Compl. ¶ 50. This "complaint" appears to refer to a letter Plaintiff sent to Spirit, titled "DEMAND LETTER FOR DAMAGES CAUSED BY SPIRIT AIRLINES @ LAS

In her response, Plaintiff also argues that the Oregon statute of limitations for contract actions should apply, instead of the COC time limit because she accepted the COC in Oregon. Oregon provides six years in which to file actions alleging breach of contract, Or. Rev. Stat. § 12.080, and two years to file tort claims, including intentional infliction of emotional distress, *see* Or. Rev. Stat. § 12.110(1). Plaintiff asserts that a contract cannot have more restrictive provisions than the minimum allowed under state law.

To determine whether the COC controls, the Court must consider whether federal law preempts Oregon's statute of limitations in this case. As described below, federal law enables airlines to define time limits in their contracts of carriage and preempt any contrary state law, so long as the airline complies with certain conditions. The question is whether Spirit's attempt to incorporate the terms of the COC by reference into Plaintiff's ticket complied with federal regulations governing notice to the passenger of these contract terms.

### 1. Federal Law Governing Airline Contracts of Carriage

Federal law, not state law, governs many aspects of interstate air transportation. The Airline Deregulation Act of 1978 (Airline Deregulation Act) preempts state law regarding pricing, routes, and services of carriers that provide interstate air transportation. 49 U.S.C. § 41713(b)(1). Congress enacted the Airline Deregulation Act, in part, "[t]o ensure that the States would not undo federal deregulation" of the airline industry. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).

The United States Department of Transportation (DOT) is charged with promulgating comprehensive regulations interpreting the Airline Deregulation Act. 49 U.S.C. § 40113. "To the

---

VEGAS," which was not filed as a legal action in any court. ECF 1-1. Without a court filing, a letter to Spirit does not initiate a "legal action" as referenced under COC Article 13.3.

extent the Secretary of Transportation prescribes by regulation, an air carrier may incorporate by reference in a ticket or written instrument any term of the contract for providing interstate air transportation." 49 U.S.C.A. § 41707. Terms that may be incorporated include limitations on liability such as "time periods within which passengers must file a claim or bring an action against the carrier to its acts or omissions." 14 C.F.R. § 253.5(b)(2).

Properly incorporated terms displace contrary state law, including statutes of limitation. "A limitation on the period during which a passenger must bring a claim against an airline carrier is [] preempted by the [Airline Deregulation Act] with respect to airline services . . . and expressly authorized by DOT regulations." *Covino v. Spirit Airlines, Inc.*, 406 F. Supp. 3d 147, 153 (D. Mass. 2019) (citing 14 C.F.R. § 253.5(b)(2)). "Consequently, such limitations cannot be displaced by state law." *Id.*; *see also Román v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1315-16 (S.D. Fla. 2020), *aff'd*, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) (finding claims time-barred by Spirit's six-month limitation on liability and noting that such limitations govern "even if more permissive temporal limitations might otherwise apply under state law"); *Banga v. Gundumolgula*, 2013 WL 3804046, at *4 (E.D. Cal. July 19, 2013), *report and recommendation adopted*, 2013 WL 11332786 (E.D. Cal. Sept. 12, 2013) (granting dismissal because the two-year limitation in Emirates' Contract of Carriage had expired before the plaintiff filed a complaint, despite a more forgiving statute of limitations in California); *Miller v. Delta Air Lines, Inc.*, 2012 WL 1155138, at *4 (S.D. Fla. Apr. 5, 2012) ("Plaintiff cannot use Florida law to expand Delta's undertaking in the Contract of Carriage by exposing it to claims made within five years, rather than the one-year expressly provided in the Contract of Carriage.").

An air carrier, however, only may incorporate terms by reference into a ticket without stating the full text of the terms—and thereby bind a passenger to those terms under federal

regulations—if the air carrier complies with the FAA regulations for notice. 14 C.F.R.

§ 253.4(a). These regulations "set uniform disclosure requirements . . . for terms incorporated by

reference into contracts of carriage for scheduled service in interstate and overseas passenger air

transportation." 14 C.F.R. § 253.1; *see also Román*, 482 F. Supp. 3d at 1313-14 (describing the

history and purposes of § 253). The regulations prescribe the form of the "conspicuous notice"

for incorporated terms: the notice must state that any terms incorporated by reference are part of

the contract, that passengers may inspect the full text of each term at the carrier's airport or city

ticket office, that passengers may receive the full text of terms by mail or other delivery service,

and that passengers may obtain more information about the terms from any location where the

carrier's tickets are sold. 14 C.F.R. §§ 253.4(b)-(c), 253.5. In sum, airlines must give proper

notice that incorporated terms exist and instruct passengers where and how they can view those

terms. *Id*. If the airline does not provide notice complying with §§ 253.4 and 253.5, a plaintiff

will not be bound by the claim restriction terms. *Id.* § 253.4(a).

### 2.  Application of Federal Notice Requirements

It is unclear at this stage of the proceedings whether Plaintiff had adequate notice of the

COC's terms. Plaintiff does not allege lack of notice, and her complaint's citations to the COC

show that she had *some* notice of the COC before filing her lawsuit.[6] Construing the pleadings in

the light most favorable to the *pro se* Plaintiff, Plaintiff may not have known about the COC until

after the six-month period for filing claims had passed. Indeed, her letter to Spirit on June 28,

2022, which she attaches to her complaint, does not mention the COC. *See* ECF 1-1. The letter,

---

[6] Plaintiff later asserts that the "first time" Plaintiff saw the COC was when she received
Defendant's Motion for Judgment on the Pleadings on January 30, 2023. Pl.'s Resp. to Def.'s
Mot. to Stay Disc., ECF 18 at 1. This assertion, however, is contradicted by the extensive
references to and quotes from the COC in Plaintiff's complaint, filed on October 17, 2022.

sent more than six months after the incident at the ticket counter, suggests that Plaintiff might not have had actual notice of the COC's time limitation clause or the COC at all until August 23, 2022, when customer support staff at Spirit replied to Plaintiff's letter referencing and linking to the COC. *See* ECF 1-1 at 9; Compl. ¶ 161 ("In an email dated August 23, 2022, in response to Plaintiff's complaint to the USDOT, Defendant cited to Article 4.3 .1 of the [COC] as the reason refused to transport Plaintiff."). Defendant does not propose *when* Plaintiff received actual notice of the COC's terms.

Moreover, along with Plaintiff's actual notice, "[e]qually important is whether Spirit has complied with the notice requirements of incorporated terms provided by DOT regulations." *Covino*, 406 F. Supp. 3d at 153 (considering both the plaintiff's "opportunity to become fully informed" of the contract, as well as Spirit's compliance with federal regulations, when determining that Spirit's online ticketless booking system reasonably provided notice of the terms in Spirit's COC). If Spirit did not provide proper notice of the terms of the COC, the COC's time limitation will not replace Oregon's statute of limitations.

Defendant points to the complaint's citations to the COC, as well as Plaintiff's breach of contract claim,[7] when arguing that the Court should incorporate by reference the COC into Plaintiff's complaint. *See Khoja*, 899 F.3d at 1002. Defendant, however, does not explain how incorporating the COC into Plaintiff's complaint and considering its terms at the pleadings stage

---

[7] Plaintiff refers to the COC or "Contract" multiple times in her breach of contract claim. Compl. ¶¶ 39 (alleging that "Defendant breached the contract when it unlawfully denied transportation services to Plaintiff after Plaintiff fulfilled all her requirements of the contract"), 97 ("Defendant breached several provisions of the Contract"), 152-180 (discussing the parties' contract, quoting from sections of the COC, and alleging breach by Defendant), 226-33 (naming a count for "breach of contract" in which Plaintiff alleges that Defendant "failed to perform their obligation under the Contract and unfairly prevented Plaintiff from receiving the benefits she was entitled to under the Contract").

would allow Defendant to avoid federal notice requirements. Further, it is not clear that Spirit

has fully complied with the federal regulations under § 253. Unlike the plaintiff in *Covino*, who

booked a ticket through Spirit's website, Plaintiff appears to have purchased her ticket through

Expedia, a third-party online travel agent (OTA).[8] In *Covino*, the court explained that Spirit's

online booking page "unambiguously stated . . . that by checking the box indicating her

agreement to Spirit's terms and conditions, Covino was agreeing to Spirit's COC." If Plaintiff

indeed used Expedia instead of Spirit's website to book her ticket, the holding in *Covino* would

not apply here.

     *Cox v. Spirit Airlines, Inc.,* illustrates why *Covino*'s reasoning may be inapplicable to this

case. 341 F.R.D. 349 (E.D.N.Y. 2022), *amended on reconsideration in part*, 2023 WL 1994201

(E.D.N.Y. Feb. 14, 2023). In *Cox*, the Eastern District of New York considered whether the

terms of Spirit's COC were incorporated by reference into passengers' tickets when the

passengers purchased those tickets through various third-party OTAs, including Expedia. *Id.*

at 365. That court distinguished *Covino* because the plaintiffs in *Cox* had booked through various

OTAs instead of the airline's website:

> Spirit relies on *Covino v. Spirit Airlines, Inc.* That case concerned
> the disclosure on Spirit's own website, not the OTAs'. . . . Here,
> neither CheapOair—nor any of the relevant OTAs—provided a
> link to Spirit's [COC]; thus, it is not clear that "Spirit provided [the
> plaintiff] an opportunity to become fully informed of the

---

     [8] In her complaint, Plaintiff does not specify the website through which she allegedly
booked her ticket and does not mention Expedia by name. Defendant, however, seeks to
incorporate by reference the "Passenger Name Record" to show that Plaintiff booked her flight
through Expedia. Oscar Decl. ¶ 2 (ECF 14 at 2); Oscar Decl. Ex. 1 (ECF 14-1). Defendant also
seeks to incorporate Expedia's Terms and Conditions to suggest that Plaintiff, by accepting
Expedia's Terms and Conditions, also accepted the terms of Spirit's COC. Esler Decl. Ex. 1
(ECF 13-1). The Court sees no basis under Ninth Circuit law to incorporate by reference these
documents, and thus considers Plaintiff's possible use of Expedia, and the Expedia Terms and
Conditions, only insofar as this information complicates the issue of notice.

> contractual provisions to which she was agreeing by booking her
> air travel with Spirit."

*Id.* at 364 n.21 (citations omitted).

The court in *Cox* denied Spirit's motion for summary judgment on the contract claims, finding a factual dispute on whether third-party booking sites such as Expedia failed to provide federally adequate notice of Spirit's COC. The court held:

> [T]here remains a dispute of fact as to whether Spirit satisfied the
> requirements of Part 253. Spirit concedes that "not all of the OTAs
> expressly stated that the text of the COC was available at the
> airport or ticket offices." Indeed, it appears CheapOair is the only
> OTA that even arguably met all of Part 253's requirements in its
> terms and conditions. . . . [Expedia's] terms and conditions . . .
> simply directed the customer to read the supplier's "full terms and
> conditions of carriage" on the supplier's website . . . .

*Id.* at 364-65 (citations omitted). The court also emphasized that "no OTA included Spirit's terms on its website—by hyperlink or otherwise." *Id.* at 366 (distinguishing *Covino*, 406 F. Supp. 3d at 153, in which the court had emphasized the "immediate and direct access to the full terms of the COC free of charge via hyperlink on the booking page"). Further, the OTAs, including Expedia, also did not provide notice that the text of the COC was available at the airport or ticket offices, nor did the OTAs inform passengers that they had the right, upon request, to receive free of charge by mail or other delivery service the full text of incorporated terms, as required under federal regulation. *See id.* 341 F.R.D. at 364 (distinguishing *Dennis v. Delta Air Lines, Inc.*, 2011 WL 4543487, at *2 (E.D.N.Y. Sept. 29, 2011)); 14 C.F.R. § 253.5(a). The court in *Cox* concluded that there remained disputed issues of fact, including notice issues and "whether Spirit complied with the FAA regulations to incorporate by reference its [COC] into Plaintiffs' contracts; this question will be resolved by determining whether Spirit took the requisite steps under Section 253." *Id.* at 366.

The reasoning in *Cox* demonstrates why ruling on the terms of the COC is inappropriate on a motion for judgment on the pleadings before the parties have had the opportunity to develop the factual background. Without evidence produced through discovery and presented through a motion for summary judgment, the Court cannot determine whether the federally mandated notice was satisfied here, and without that, ruling on COC terms is premature. Additionally, even if the Court were to convert Defendant's motion to a motion for summary judgment and consider the information provided about Plaintiff's purported interaction with Expedia, *Cox* suggests that summary judgment *also* fails if based on an improperly noticed contract term. *See id.* at 365. It may be that Plaintiff's notice of the COC time-limitation term is an issue of fact for the jury. *See id.*; *see also Price v. Delta Airlines, Inc.*, 5 F. Supp. 2d 226, 232 (D. Vt. 1998) (discussing notice of incorporated terms in physical airline ticket packages and finding that "whether or not notice was provided to the Prices is a material fact in dispute, precluding summary judgment on the issue of timeliness of the suit"). Defendant's request that the Court consider the COC as binding on Plaintiff implies an argument that lack of compliance with federal notice regulations is irrelevant if Plaintiff had *actual* notice of the COC. But even if Plaintiff had actual notice, the precise relationship between actual notice and the federally mandated notice is unclear, and Defendant provides no authority to guide this distinction.

The Court declines to dismiss *all* of Plaintiff's claims based on the time-limitation contained in the COC. As discussed below, however, the Court dismisses Plaintiff's breach of contract claim on this basis because the breach of contract claim assumes a binding agreement between the parties to the terms of the COC, which includes Article 13.3.

## B.  Civil Rights Claims

In her complaint, Plaintiff asserts a claim under Title II of the Civil Rights Act of 1964,

42 U.S.C § 2000a.[9] She alleges a cause of action for personal appearance discrimination based

on her tattoos and hairstyle in a place of public accommodation. Defendant argues that Plaintiff

fails to plead facts sufficient to raise a prima facie case of discrimination under 42 U.S.C § 2000a

because (1) people with dyed hair and people with tattoos are not protected classes under federal

civil rights law, and (2) a commercial airplane is not a place of public accommodation.

### 1.  Protected Class

Under 42 U.S.C § 2000a(a): "All persons shall be entitled to the full and equal enjoyment

of the goods, services, facilities, privileges, advantages, and accommodations of any place of

public accommodation, as defined in this section, without discrimination or segregation on the

ground of race, color, religion, or national origin." 42 U.S.C § 2000a(a). The classes that are

afforded protection under the Civil Rights Act—race, color, religion, and national origin—are

often called "protected classes."

Plaintiff's civil rights cause of action fails as a matter of law because Plaintiff fails to

plead discrimination based on any legally protected class. For tattoos, Plaintiff herself

acknowledges this issue: "Plaintiff is aware there is not a legally defined 'protected class' for

---

[9] Plaintiff's complaint does not allege any state law discrimination claims, but Plaintiff's response mentions both Oregon law (Or. Rev. Stat. 659A.400) and Nevada law (Nev. Rev. Stat. 651.050). ECF 19 at 30-33. If Plaintiff intends to bring state law discrimination claims, she must expressly assert those claims in her complaint. The Court notes, however, that Oregon law is inapplicable because the alleged denial of boarding occurred in Nevada. *See, e.g.*, *Ivie v. AstraZeneca Pharm., LP*, 2021 WL 5167283 (D. Or. Nov. 5, 2021) (finding that Or. Rev. Stat. § 659A.199(1) did not apply to alleged misconduct outside of Oregon). Moreover, as discussed in the following section, state law claims are expressly preempted by the Airline Deregulation Act because Plaintiff's claims arise from an alleged denial of boarding, which is a "service" under the Act.

people with significant visible tattoos and other 'body art' . . . ." Pl.'s Resp. to Def.'s Mot. J.

Pleadings ¶ 7 (ECF 19 at 2). For hair, unlike cases in which hairstyle is considered evidence of

discrimination based on race or color, *see, e.g.*, *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538

F.2d 164, 168 (7th Cir. 1976) (describing that an employer told an employee she "could never

represent Blue Cross with [her] Afro"), Plaintiff's allegations are insufficient to establish that her

hair style is linked to a protected class. Plaintiff also describes her discrimination as a "novel"

claim and "ask[s] this Court to make a 'novel' ruling—that discrimination based only on

personal appearance be recognized as a 'protected class' which is anyone other than 'the norm'

and what the Civil Rights Act intended to prevent." *Id.* ¶ 6. Plaintiff invites the Court "to 'make

history' and rule in favor of Plaintiff" by expanding the Civil Rights Act. *Id.* ¶ 49 (ECF 19 at 9).

The Court declines the invitation to rewrite federal law. The Constitution vests the federal

government's legislative powers in Congress and reserves most other regulatory authority to the

States. *See* Art. I, § 1; *see also* Amend. 10. Even if the Court thought that the civil rights laws

should be expanded in the direction that Plaintiff envisions, "the judge is obligated to apply the

law as he understands it to be rather than as he thinks it ought to be." John Paul Stevens, *Judicial*

*Restraint*, 22 San Diego L. Rev. 437, 446 (1985); *see also Texas v. Johnson*, 491 U.S. 397, 420-

21 (1989) (J. Kennedy, concurring) ("The hard fact is that sometimes we must make decisions

we do not like. We make them because they are right, right in the sense that the law and the

Constitution, as we see them, compel the result."). Plaintiff's claim of "personal appearance

discrimination" fails as a matter of law.[10]

---

[10] In her response to Defendant's motion for judgment on the pleadings, Plaintiff filed a
declaration and exhibits containing photographs, several articles about tattoo or body art
discrimination, studies on tattoos and related issues, and various publications on stereotypes and
stigma. ECF 20. Plaintiff also later filed a "Motion to Allow Supplemental Declaration to be

### 2.  Places of Public Accommodation

Under 42 U.S.C § 2000a, the types of establishments that qualify as "place[s] of public

accommodation" are limited. Such places include:

> (1) any inn, hotel, motel, or other establishment which provides
> lodging to transient guests, other than an establishment located
> within a building which contains not more than five rooms for rent
> or hire and which is actually occupied by the proprietor of such
> establishment as his residence;
>
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda
> fountain, or other facility principally engaged in selling food for
> consumption on the premises, including, but not limited to, any
> such facility located on the premises of any retail establishment; or
> any gasoline station;
>
> (3) any motion picture house, theater, concert hall, sports arena,
> stadium or other place of exhibition or entertainment; and

---

Filed," to which she attached a supplemental declaration and exhibits containing information on
"hair discrimination," transgender athletes, and airport traffic volume. ECF 21.

As explained above, consideration of this evidence is impermissible at this stage of the
proceedings. On a Rule 12(b) or (c) motion to dismiss or motion for judgment on the pleadings,
when evaluating the sufficiency of a complaint's factual allegations, consideration of evidence
outside the complaint requires converting the motion to a motion for summary judgment unless
the evidence is appropriate for judicial notice or incorporation by reference. *See* Fed. R. Civ.
P. 12(d); *Khoja*, 899 F.3d at 998. Plaintiff does not suggest that either exception applies to the
materials she submits, and the Court does not find them subject to an exception. The Court
therefore denies Plaintiff's Motion to Allow Supplemental Declaration to be Filed, ECF 21, and
disregards Plaintiff's first declaration, ECF 20.

Even if the Court were inclined to consider these exhibits and convert this motion to one
for summary judgment, the exhibits would not change the Court's analysis. The Court accepts as
true all well-pleaded material facts alleged in the complaint and construes them in the light most
favorable to Plaintiff. *See Fleming*, 581 F.3d at 925; *see also LeGras v. AETNA Life Ins. Co.*, 786
F.3d 1233, 1236 (9th Cir. 2015) (stating that in considering a Rule 12(c) motion a court must
"accept the factual allegations in the complaint as true and view them in a light most favorable to
the plaintiff"). The Court need not, however, accept legal conclusions that are couched as factual
allegations. *Iqbal*, 556 U.S. at 678-79. Many exhibits Plaintiff provides address facts already
alleged in her complaint. Because the Court accepts as true her well-pleaded material facts, these
exhibits are thus unnecessary at the pleadings stage. The remaining exhibits do not cure the
defects in Plaintiff's pleading.

> (4) any establishment (A)(i) which is physically located within the
> premises of any establishment otherwise covered by this
> subsection, or (ii) within the premises of which is physically
> located any such covered establishment, and (B) which holds itself
> out as serving patrons of such covered establishment.

42 U.S.C § 2000a(b)(1)-(4).

Plaintiff's claim is based on denial of air travel. Airplanes, airlines, and boarding gates are not places of public accommodation as enumerated under 42 U.S.C § 2000a(b). Many courts have found that the Civil Rights Act is inapplicable to claims of denied boarding on an airline. *See, e.g.*, *Banks v. Am. Airlines Grp., Inc.*, 2020 WL 8767725, at *6, (C.D. Cal. Dec. 29, 2020) ("[A] passenger flight is not a place of public accommodation under the Title II definition."); *James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 305 (E.D.N.Y. 2017) (Title II is inapplicable to airplanes and other forms of transportation); *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 139 (D.D.C. 2005) (Title II is inapplicable to claims of alleged discriminatory denial of air travel); *Huggar v. Nw. Airlines, Inc.*, 1999 WL 59841, at *8-9, (N.D. Ill. Jan. 26, 1999) ("Congress did not intend to include aircraft within the meaning of a place of public accommodation."). This Court agrees and finds that Plaintiff fails to allege that the purported discrimination occurred in "place of public accommodation" as defined under Title II of the Civil Rights Act of 1964. The Court grants Defendant's motion for judgment on the pleadings against Plaintiff's civil rights claim.

## C. Intentional Infliction of Emotional Distress

Plaintiff's intentional infliction of emotional distress claim is preempted by the Airline Deregulation Act. The Airline Deregulation Act's preemption clause provides that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The words of the Airline Deregulation Act

"express a broad pre-emptive purpose." *Morales*, 504 U.S. at 383. Therefore, if a claim seeks enforcement of state law that relates to the "price, route, or service of an air carrier," that claim is expressly preempted.

Tort claims for intentional infliction of emotional distress are governed by state common law. To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Delaney v. Clifton*, 180 Or. App. 119, 129, 41 P.3d 1099 (2022) (quoting *McGanty v. Staudenraus*, 321 Or. 532, 543, 901 P.2d 841 (1995) (citation omitted)).

Plaintiff's complaint shows that her claim for emotional distress is linked to Spirit's denial of an airline service to Plaintiff—that is, denial of boarding and passage on Defendant's flight. Accordingly, Plaintiff's emotional distress claim is preempted by the Airline Deregulation Act. *See Covino*, 406 F. Supp. 3d at 151 ("Covino's claims of emotional distress based on the flight attendant's behavior toward her are inextricably related to the flight attendant's denial of an airline service. Accordingly, Covino's claims are preempted by the ADA and Spirit's motion to dismiss will be allowed."). The Court dismisses this claim without leave to amend, as amendment cannot cure federal preemption.

## D.  Breach of Contract

Contract claims are not wholly preempted by the Airline Deregulation Act. In *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), the Supreme Court stated, "[w]e do not read the [Airline Deregulation Act]'s preemption clause . . . to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 288; *id.* at 232 ("[T]he [Airline

Deregulation Act] permits state-law-based court adjudication of routine breach-of-contract claims . . . ."). This exception under *Wolens*, however, is narrow and limited to the terms bargained for by the parties. "This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. *Wolens* explains that "[t]he [Airline Deregulation Act]'s preemption clause is meant to stop States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Id.* at 232.

To state a claim for breach of contract in Oregon, Plaintiff "must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damage to plaintiff." *Slover v. State Bd. Of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996) (quotation marks omitted). Because the Airline Deregulation Act confines Plaintiff's breach of contract claim to the terms of the parties' bargain, which Plaintiff defines as the COC,[11] the Court considers the existence and terms of the COC for this claim. Plaintiff alleges that Defendant breached Article 2.1 of its COC by failing to honor her confirmed reservation to transport her on its airline. Plaintiff alleges that none of the limitations or restrictions in the COC apply to her, including Article 4.3.1 regarding disorderly or aggressive behavior towards other guests, because she did not behave aggressively or in a disorderly manner to *other guests* (as opposed to airline staff) or at all. She also alleges that she met all conditions

---

[11] The Court notes that Plaintiff does not allege any contractual agreement other than the COC, and as a result, the Court does not consider whether any other express or implied contract exists between the parties.

required of her under the COC. Defendant's only response to the breach of contract claim is that Plaintiff's claim is time-limited by Article 13.3, as discussed previously.

Plaintiff's allegations show that she concedes the applicability and enforceability of the COC as a binding agreement between the parties. She does not allege (or argue) any basis for tolling the statute of the limitations clause while enforcing the other clauses, other than her previously rejected argument that the longer Oregon statute of limitations governs. Thus, the Court agrees with Defendant that Article 13.3 of the contract bars Plaintiff's claim. Plaintiff did not file her complaint within six months of the incident. State laws or policies external to the agreement, including Oregon's more permissive statute of limitations, do not displace the terms of the contract regarding the provision of services. *See Wolens*, 513 U.S. at 233. The Court thus dismisses the breach of contract claim as based on the COC and finds that it is time-barred.[12]

## E.  Leave to Amend

In her response, Plaintiff requested leave to amend. Despite the presumption under Rule 15(a) of the Federal Rules of Civil Procedure in favor of granting leave to amend, *Eminence Capital*, 316 F.3d at 1052, futility of amendment alone can justify denying leave to amend. *Bonin*, 59 F.3d at 845. Plaintiff, however, is proceeding *pro se* and is held to a less stringent standard. For Plaintiff's intentional infliction of emotional distress, amendment will not cure the defects, and so the Court denies leave to amend. For her other claims, amendment will not cure many of the defects the Court has identified, including Plaintiff's reliance on Title II of the Civil Rights Act to allege personal appearance discrimination for an unprotected class outside of a "place of public accommodation." If, however, Plaintiff believes she can cure the

---

[12] The Court reiterates that the same logic does not necessarily apply to the other claims. Binding Plaintiff to the COC's terms requires adequate notice of those terms, and the presence of a breach of contract claim in the complaint does not *necessarily* satisfy the notice requirement.

defect in her breach of contract claim or state a claim on other grounds, the Court grants Plaintiff leave to amend her complaint.

## CONCLUSION

The Court DENIES Plaintiff's Motion to File Supplemental Declaration, ECF 21, and GRANTS Plaintiff's Motion to File a Surresponse, ECF 23. The Court GRANTS Defendant's Motion for Judgment on the Pleadings, ECF 12. Plaintiff has leave to file an amended complaint within twenty-eight (28) days from the date of this Opinion and Order. The Court GRANTS Defendant's Motion for Protective Order for Stay of Discovery, ECF 15, and further stays discovery until a valid amended complaint has been filed.

**IT IS SO ORDERED**.

DATED this 17th day of May, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge