IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KIMBERLY M. SCHOENE**, | Case No. 3:22-cv-1568-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **SPIRIT AIRLINES, INC.**, | |
| Defendant. | |

Kimberly M. Schoene, Plaintiff, *pro se*.

Aaron D. Bigby, NORTHCRAFT BIGBY PC, 819 Virginia Street, Suite C-2, Seattle, WA 98101; and Michael Cutler, VICTOR RANE, 9350 Wilshire Blvd., Suite 308, Beverly Hills, CA 90212. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Kimberly M. Schoene, proceeding *pro se*, brings this action against Spirit

Airlines, Inc. (Spirit). The Court granted Spirit's earlier motion for judgment on the pleadings

but gave Plaintiff leave to replead. ECF 27. Plaintiff filed an amended complaint on June 14,

2023. ECF 28. Plaintiff now asserts a single claim for breach of implied contract, alleging that

Spirit breached an implied contract to transport her on its airliner when Spirit's employees

refused to allow Plaintiff to board her flight. Plaintiff alleges economic damages for out-of-

pocket travel and medical expenses and lost profits. Plaintiff also alleges non-economic damages from emotional harms.

Spirit again moves for judgment on the pleadings. ECF 29. Spirit argues that Plaintiff's Amended Complaint should be dismissed because: (1) Plaintiff's claim for denial of boarding is preempted by the Airline Deregulation Act of 1978 (Act), 49 U.S.C. §§ 40101-44310; and (2) Plaintiff fails to state a claim for which relief can be granted under a theory of breach of implied contract. Plaintiff filed a response to Spirit's motion, ECF 33, and a motion for leave to file a second amended complaint, ECF 34. Plaintiff requests leave to amend her pleading to add allegations of specific regulatory violations by Spirit and to add claims for personal injury and negligence. For the reasons explained below, the Court denies Spirit's Second Motion for Judgment on the Pleadings. The Court also grants Plaintiff's Motion for Leave to Amend.

## STANDARDS

### A.  Motion for Judgment on the Pleadings

A motion for judgment on the pleadings is brought under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)). Thus, in a Rule 12(c) motion a court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Dismissal for failure to state a claim under Rule 12(b)(6) "is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). In addition, "to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (*Iqbal* standard applies to review of Rule 12(c) motions).

Although Rule 12(c) makes no mention of leave to amend, courts have discretion to do so. *Carmen v. S. F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001). Indeed, in *Harris v. County of Orange*, the Ninth Circuit affirmed a district court's dismissal under Rule 12(c) but reversed for failing to grant leave to amend. 682 F.3d 1126, 1131, 1134-35 (9th Cir. 2012). Under Rule 15(a), courts should "freely" grant leave to amend "when justice so requires," and absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation marks omitted).

## B.  *Pro Se* Litigants

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon*

*Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a court must accept as true all well-pleaded factual allegations in a complaint, that doctrine does not apply to legal conclusions. *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**C.  Motion to Amend Pleadings**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (cleaned up). The purpose of the rule "is 'to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). A district court, however, may, within its discretion, deny a motion to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.'" *Zucco Partners, LLC v.*

*Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Generally, however, "[a]bsent prejudice, or a strong showing of any of the remaining [four] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052 (alterations added) (emphasis in original). When weighing the factors, all inferences should be made in favor of granting the motion to amend. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

Leave to amend may be denied if the proposed amendment is futile or would be subject to immediate dismissal. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988))). If the underlying facts or circumstances possibly could "be a proper subject of relief, [a plaintiff] ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The standard for assessing whether a proposed amendment is futile therefore is the same as the standard imposed

under Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see, e.g.*, *Miller*, 845 F.2d at 214, although "viewed through the lens of the requirement that courts freely give leave to amend when justice so requires." *Barber v. Select Rehab., LLC*, 2019 WL 2028519, at *1 (D. Or. May 8, 2019) (quotation marks omitted).

## BACKGROUND[1]

On December 20, 2021, Plaintiff purchased an airline ticket for a flight with Spirit. Plaintiff intended to travel from Las Vegas, Nevada to Portland, Oregon, on a Spirit flight scheduled for January 3, 2022. Despite Plaintiff arriving 15 minutes early for her January 3rd flight, Spirit closed the plane's doors and did not allow Plaintiff and her friend to board. Spirit rebooked Plaintiff to depart on a flight leaving the next day, and Plaintiff paid for hotel accommodations and transportation for the night.

The incident relevant to this lawsuit took place the next day. Plaintiff alleges that she and her friend returned to the Las Vegas airport and proceeded to the boarding gate with sufficient time to board the plane. In early 2022, many public places had COVID-19 restrictions and masking rules, with which Plaintiff states she generally complied. Plaintiff had bought a milkshake and was drinking it when she approached the ticket counter. As a result, Plaintiff's mask was hanging from her ear rather than covering her mouth. Plaintiff alleges that Spirit's employee at the ticket counter "yelled" at Plaintiff to put on her mask, and Plaintiff quickly complied. Spirit's employee then shut the doors to the airplane. A verbal altercation began, involving multiple employees of Spirit, during which Plaintiff's ticket was torn in half and her seat was given to a stand-by passenger. Plaintiff asserts that she remained calm and did not raise her voice during the altercation, but Plaintiff was not allowed to board the flight. Plaintiff states

---

[1] The facts recited are alleged in Plaintiff's Amended Complaint, ECF 28.

that she believes that Spirit's employees singled out and became aggressive toward Plaintiff because of her visible tattoos, face piercings, and pink hair.

After the altercation, and allegedly unable to book another flight, Plaintiff rented a car and drove home to Portland. Upon arriving home, Plaintiff encountered additional delays retrieving her checked luggage from Spirit. The drive from Las Vegas to Portland allegedly caused Plaintiff to suffer physical problems that required medical treatment and affected her ability to work.

## DISCUSSION

Spirit moves for judgment on the pleadings on two grounds. First, Spirit argues that Plaintiff's breach of implied contract claim is preempted by the Act. Second, Spirit argues that Plaintiff fails to state a claim for which relief can be granted under a theory that Spirit breached an implied contract between the parties.

## A.  Preemption

Plaintiff alleges that Defendant breached the parties' implied contract by not allowing Plaintiff to board and travel on the flight for which she paid. Spirit argues that Plaintiff's breach of implied contract claim, arising from the denial of boarding, is expressly preempted under the Act because the claim relates to the "service of an air carrier" for purposes of preemption.

The Act's preemption provision provides that with limited exceptions,

> a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation[.]

49 U.S.C. § 41713(b)(1).

### 1.   Whether Plaintiff's Claim Relates to a Service of an Air Carrier

For purposes of the Court's preemption analysis, the threshold issue is whether Plaintiff's claim relates to a "service of an air carrier," within the meaning of the Act's preemption provision. The Supreme Court has stated that the words "related to" in the Act's preemption provision "express a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). Thus, if a claim seeks enforcement of state law that relates to the "price, route, or service of an air carrier," that claim is expressly preempted under the Act. *See id.* at 383-84.

A state law is "related to" a price, route, or service if it has (1) "a connection with," or (2) "reference to" a price, route, or service. *Air Transp. Ass'n of Am. v. City & County of San Francisco*, 266 F.3d 1064, 1070 (9th Cir. 2001) (quotation marks omitted). The Ninth Circuit has held that the terms "price," "route," and "service" in the Act's preemption provision "were used by Congress in the public utility sense." *Id.* at 1071. The term "service" thus "refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided (as in, 'This airline provides service from Tucson to New York twice a day.')." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265-66 (9th Cir. 1998) (en banc). In other words, "service" in this context "refer[s] to the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *Nat'l Fed. of the Blind v. United Airlines Inc.*, 813 F.3d 718, 726 (9th Cir. 2016) (alteration in original) (quoting *Charas*, 160 F.3d at 1261). "Service" does not refer to "the various amenities provided by airlines, such as 'in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities.'" *Id.* (quoting *Charas*, 160 F.3d at 1261).

The Ninth Circuit defines "service" for purposes of preemption more narrowly than other circuits. *See id.* at 727-28 (contrasting the Ninth Circuit's definition with the definitions applied

by other circuit courts). Spirit identifies no authoritative Ninth Circuit case explaining under what circumstances claims arising from a denial of boarding relate to a "service of an air carrier" within the meaning of the Act's preemption provision, and the Court has found none. The Ninth Circuit has held, however, that a state-law discrimination claim arising from an airline's denial of transport to a disabled individual did *not* relate to a service of an air carrier for preemption purposes. *See Newman v. Am. Airlines, Inc.*, 176 F.3d 1128, 1130-31 (9th Cir. 1999). Thus, in the Ninth Circuit, claims arising from an airline's denial of transport are not categorically deemed to relate to the "service of an air carrier" for purposes of preemption under the Act. Based on the Ninth Circuit's narrow definition of "service," Plaintiff's claim does not appear to fall within that definition. Thus, Plaintiff's claim would not be subject to preemption under the Act.

### 2. Whether the *Wolens* Exception Applies

As the Ninth Circuit has recognized, however, "the scope of [the Act's] preemption has been a source of considerable dispute since its enactment." *Charas*, 160 F.3d at 1263.[2] For this reason, the Court discusses an additional ground for finding that Plaintiff's claim is not subject to preemption under the Act, which is that Plaintiff's claim falls within the exception articulated by the Supreme Court in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995).

---

[2] Decisions from other circuits have cast doubt on the continuing vitality of the narrow definition of "service" announced in *Charas* in light of later Supreme Court precedent. *See, e.g.*, *Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 95 (1st Cir. 2013) ("In our view, *Rowe* [*v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008)] forecloses the *Charas* interpretation of 'service' as a term closely related to prices and routes."). The Ninth Circuit, however, as recently as 2016 expressly confirmed that the definition of "service" announced in *Charas* remains good law and is not inconsistent with the later Supreme Court cases like *Rowe* and *Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014). *Nat'l Fed. of the Blind*, 813 F.3d at 727-28.

In *Wolens*, the Supreme Court held that the Act "permits state-law-based court adjudication of routine breach-of-contract claims." *Id.* at 232. In other words, the "broad, preemptive purpose" of the Act is subject to limitations, and state-law claims for breach of contract are not wholly preempted by the Act. *See id.* at 228-29. *Wolens* explains that the Act's preemption clause is meant to "stop[] States from imposing their own substantive standards with respect to rates, routes, or services, but *not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated*." *Id.* at 232-33 (emphasis added). This exception under *Wolens*, however, is narrow and limited to the terms bargained for by the parties. *See id.* at 233 (courts are confined "in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement").

Later authority interpreting *Wolens* supports the conclusion that Plaintiff's claim, if adequately pleaded, is not preempted under the Act. The Supreme Court in *Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014) clarified under what circumstances the *Wolens* exception applies. There, the Supreme Court evaluated the *Wolens* exception in the context of a claim for a breach of the implied covenant of good faith and fair dealing. Because the implied covenant was a state-imposed obligation under Minnesota law that went beyond the terms of the parties' agreement, and because the parties could not contract around the implied covenant under state law, the Supreme Court held that this claim sought to enlarge the contractual agreement and was therefore preempted under the Act. *Id*. at 286-87, 289. Thus, whether a state-law claim for breach of contract is preempted under the Act depends on whether the claim "seeks to enlarge the contractual obligations that the parties voluntarily adopt." *See id.* at 276.

Spirit asserts that Plaintiff seeks to enforce an alleged breach of a contract that Spirit characterizes as a "purported implied contract to transport Plaintiff under any and all circumstances without any terms and conditions (essentially to warrant or guarantee transportation), to recover unlimited damages, and take advantage of a state-imposed statute of limitations." Spirit argues that it did not voluntarily undertake these obligations, contending that the terms of the express contract, the Contract of Carriage (COC), governs the parties' rights and obligations. According to Spirit, Plaintiff's claim is based on the denial of a "service" within the meaning of the Act's preemption provision, and is not subject to the *Wolens* exception because Plaintiff's claim seeks to enlarge the contractual obligations voluntarily adopted by the parties.

Plaintiff is not seeking to enforce obligations beyond what Plaintiff contends are the terms of the alleged implied contract. Plaintiff's breach of contract claim thus is not like the breach of implied covenant claim in *Northwest, Inc*. And although Spirit contests that it agreed to the terms of the implied contract as alleged in Plaintiff's Amended Complaint, the Court must, at this stage, accept all factual allegations in the pleading as true and construe those allegations in the light most favorable to Plaintiff. As the Ninth Circuit explained in a subsequent decision applying both *Wolens* and *Northwest, Inc.*: "The States may not impose their own rules regarding fares, routes, or services, but may afford relief for breaches of obligations the airlines voluntarily undertook themselves, *even when the obligations directly relate to fares, routes, and services*." *Hickox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017) (emphasis added). In that case, because the plaintiff was suing for a breach of a contract voluntarily entered into by the parties, the Ninth Circuit held that "[i]f [the plaintiff] adequately pleaded breach of contract, then her claim is not preempted." *Id.* Thus, the Court finds that Plaintiff's breach of implied contract claim is not preempted under the Act, either because it does not relate to an airline's "service"

under the Ninth Circuit's definition of that term or, in the alternative, because it falls within the *Wolens* exception to the Act's preemption.

## B.  Breach of Implied Contract

Spirit argues that the Court should dismiss Plaintiff's breach of implied contract claim because the claim cannot co-exist with an express contract, *i.e.*, the Contract of Carriage (COC). Spirit also asserts that Plaintiff fails to sufficiently plead the existence of an implied contract and recoverable damages arising from an alleged breach.

### 1.  Whether the Contract of Carriage (COC) Controls

Spirit argues that Plaintiff's claim for breach of an implied contract cannot legally co-exist with the parties' express contract, the COC. Plaintiff's original complaint alleged a breach of the COC, but Plaintiff's amended complaint does not. Spirit argues that the Court "already held, correctly, that in her Original Complaint, Plaintiff defined the terms of the parties' bargain as those terms contained within the COC." Spirit appears to argue that the Court's determination about the applicability of the COC in its previous Opinion and Order precludes Plaintiff's amended claim for a breach of an implied contract. The Court disagrees.

"Once the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018). When an original complaint is dismissed without prejudice, "the filing of an amended complaint does not ask the court to reconsider its analysis of the initial complaint. The amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; we do not ask whether the plaintiff is 'precluded' or 'barred' by the prior ruling." *Id.* That Plaintiff may have alleged an express breach of the COC in her previous

pleading does not prevent her from now pleading the existence and breach of an implied contract between the parties.[3]

### 2.   Whether Plaintiff Sufficiently Pleads Breach of an Implied Contract[4]

Spirit argues that Plaintiff fails to allege facts that support a claim for a breach of an implied contract. To state a claim for breach of contract, a plaintiff "must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. Of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996) (quotation marks omitted). Express contracts and implied-in-fact contracts "are no different in legal effect." *Mindful Insights, LLC v. VerifyValid, LLC*, 301 Or. App. 256, 270 (2019), *adhered to on reconsideration*, 302 Or. App. 528 (2020). "The only difference between an express contract and an implied-in-fact contract is the means by which the parties manifest their agreement." *Id.* at 266 (quotation marks omitted). "In an express contract, the parties manifest their agreement by their words, whether written or spoken." *Staley v. Taylor*, 165 Or. App. 256, 262 (2000). "In an implied-in-fact contract, the parties' agreement is inferred, in whole or in part, from their conduct." *Id.*; *In re Comp. of Gadalean*, 364 Or. 707, 717 n.3 (2019) (same) (citing *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 129 n.5 (2017)). An implied-in-fact contract "can arise only where the natural and just interpretation of the acts of the parties warrants such conclusion." *Owen v. Bradley*, 231 Or. 94, 103 (1962).

---

[3] The parties dispute whether Spirit complied with the regulatory notice requirements that govern the enforceability of the COC. As stated in the Court's previous Opinion and Order, given the lack of discovery at this stage of the proceedings, it is inappropriate for the Court to rule on whether the COC governs the parties' obligations.

[4] Although Plaintiff does not specify whether the claim for breach of "implied contract" refers to a contract implied in fact or a contract implied in law, the Court construes Plaintiff's allegations as asserting a claim for breach of an implied-in-fact contract.

Plaintiff alleges that the parties formed a contract when Plaintiff paid for the services offered by Spirit to transport her from Las Vegas to Portland, and Spirit accepted her payment and booked Plaintiff on its flight. The terms of this implied contract, as alleged by Plaintiff, are that Spirit would fly Plaintiff from Las Vegas to Portland if Plaintiff "complied with all requirements and boarding procedures, including COVID requirements." Plaintiff states that she performed her obligations under the contract but alleges that Spirit breached its obligations by not allowing Plaintiff to board and travel on the flight that she booked. Plaintiff alleges economic damages totaling $4,327.23 for "out-of-pocket expenses," economic damages for lost profits totaling $18,000, and non-economic damages associated with mental suffering and emotional distress totaling $75,000 or an amount to be determined at trial.

### a.  Existence of an Agreement

Spirit contends that Plaintiff fails to state a claim for a breach of an implied-in-fact contract because there was no "meeting of the minds." Spirit argues that, because it subjectively understood the terms of the COC to govern the parties' bargain, there was no mutual intent to enter into the agreement as alleged by Plaintiff. Spirit's appeal to its own subjective understanding is misplaced. *See, e.g.*, *Newton/Boldt v. Newton*, 192 Or. App. 386, 393 (2004) ("Oregon subscribes to the objective theory of contracts."); *City of Canby v. Rinkes*, 136 Or. App. 602 (1995) ("[W]hether the parties entered into an agreement does not depend on whether the parties had the same subjective understanding of their agreement, that is, on whether their 'minds met' on the same understanding."). The question for the first step of the analysis is whether the "natural and just" interpretation of the parties' conduct (*i.e.*, Plaintiff paying money and Spirit accepting Plaintiff's money and issuing her a boarding pass for travel on its airliner) demonstrates an objective intent to form an agreement. Whether the contract is express, as Spirit contends, or implied, as Plaintiff contends, viewing the parties' conduct objectively gives rise to

the reasonable inference that the parties intended to agree to *something. See Staley v. Taylor*, 165 Or. App. 256, 262 n.6 (2000) ("Frequently, implied-in-fact contracts arise because an accepted course of conduct would permit a reasonable juror to find that the parties understood that their acts were sufficient to manifest an agreement.").

### b. Terms

Spirit next argues that Plaintiff's breach of implied-in-fact contract claim should be dismissed because it is predicated on a theory in which Spirit agreed "to transport Plaintiff under any and all circumstances without any terms and conditions (essentially to warrant or guarantee transportation)." The amended complaint, however, acknowledges that Plaintiff's passage on Spirit's airliner was conditioned upon her compliance with "all requirements and boarding procedures, including COVID requirements." The issue at this stage of the analysis is whether the terms of the parties' bargain, as alleged by Plaintiff, are "sufficiently definite to provide a basis for determining whether a breach has occurred." *See Logan v. D.W. Sivers Co.*, 207 Or. App. 231, 241 (2006), *reversed in part on other grounds,* 343 Or. 339 (2007).

Two considerations guide the Court's conclusion that the alleged terms provide a sufficient basis for determining whether the purported implied-in-fact contract has been breached. First, in the context of an implied-in-fact contract, "the terms of the parties' agreement may be inferred from the parties' conduct." *Jaqua v. Nike, Inc.*, 125 Or. App. 294, 297 (1993) (concluding that the trial court erred by granting a motion to dismiss the plaintiff's claim for breach of an implied-in-fact contract where the defendant's conduct gave rise to an inference that it had agreed to compensate the plaintiff), *overruled in part on other grounds by Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115 (2017). Plaintiff's alleged conduct may demonstrate that she agreed to comply with all reasonably expected COVID-19 travel requirements and

boarding procedures, and Spirit's alleged conduct may demonstrate that it agreed, if Plaintiff

complied with her obligations, to transport her to her destination.

Second, Oregon law cautions that generally courts "should avoid the destruction of

contracts and strive instead to carry into effect the reasonable intentions of the parties if that can

be ascertained." *Harrisburg Educ. Ass'n v. Harrisburg Sch. Dist. No. 7*, 186 Or. App. 335, 346

(2003) (quotation marks omitted). Oregon courts have stressed that the approach should be

"pragmatic, not formalistic: 'Apparent difficulties of enforcement that arise out of uncertainties

in expression often disappear in the light of courageous common sense and reasonable

implications of fact.'" *Id.* (some internal quotation marks omitted) (quoting *Van v. Fox*, 278

Or. 439 (1977)). Consequently, "in some circumstances, when the parties have bargained to an

understanding but have not agreed with respect to an essential term, the court may imply a

reasonable term." *Hughes v. Misar*, 189 Or. App. 258, 266 (2003); *see also In re Premera Blue

Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1198-99 (D. Or. 2016)

("Whether [a contract is] express or implied in fact, under certain circumstances, a court may add

or supply an omitted essential term.").

Taking all allegations as true and construing them in the light most favorable to Plaintiff,

as the Court must do at this stage of the proceedings, the alleged terms provide a basis for

determining whether the parties breached their obligations under the alleged implied-in-fact

contract. If the circumstances of this case are such that Spirit is unable to establish that the

express terms of the COC govern the parties' agreement, and instead this case progresses on

Plaintiff's theory of an implied-in-fact contract, Spirit could show that Plaintiff breached her

obligations under the alleged agreement by, for example, establishing that Plaintiff did not

comply with the airline's COVID-19 masking policy or by establishing that Plaintiff did not

comply with all reasonably expected boarding procedures. If circumstances arise in which the parties' obligations under the contract must be stated with additional specificity, the Court may address at that time whether a reasonable term is appropriately supplied by the Court. At this stage in the proceedings, however, the amended complaint contains sufficient factual allegations to state a cognizable legal theory.

### c. Damages

Spirit also argues that Plaintiff does not allege *recoverable* damages resulting from Spirit's alleged breach of the contract implied in law, and for that reason, Spirit contends dismissal is appropriate. Alternatively, Spirit asks that the Court strike Plaintiff's damages. Spirit argues that Plaintiff's alleged damages are inadequate because Plaintiff's recovery is limited to only damages that are foreseeable. Spirit contends that the only foreseeable damages that Plaintiff can allege is for a refund of the cost of her ticket.

Spirit's argument about damages is unavailing at this stage of the proceedings. Plaintiff has sufficiently pleaded that Spirit's alleged breach resulted in damages. Whether those damages are available to Plaintiff, in whole or in part, is not a necessary determination for a motion for judgment on the pleadings.[5] *Cf. Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 1000 (N.D. Cal. 2020) ("[A] complaint is not subject to a motion to dismiss for failure to state a claim under Rule 12(b)(6) because the prayer seeks relief that is not recoverable as a matter of law."); *Voth v. Smith*, 188 Or. App. 59, 62 (2003) ("We are not persuaded by defendants' argument that plaintiff's allegations of economic damages are insufficient. His complaint specifically alleges that he has suffered $50,000 in economic damages as a result of defendants' conduct. It may be

---

[5] The Court notes, however, that emotional distress damages are not recoverable in a breach of contract action under Oregon law. *See, e.g.*, *Moody v. Or. Cmty. Credit Union*, 371 Or. 772, 799 (2023).

that defendants could have moved to make the allegations of economic damage more definite and certain, . . . or they could always move for summary judgment if discovery reveals that plaintiff has not suffered economic damages. But plaintiff's allegations of economic damages are sufficient to survive a motion to dismiss for failure to state a claim." (citations omitted)).

## C.  Leave to Amend Pleading

Plaintiff moves for leave to amend the Amended Complaint to add claims for personal injury and negligence and to add allegations related to Spirit's noncompliance with regulatory requirements. Spirit opposes Plaintiff's motion, contending that amendment would be futile because the regulations do not provide a private right of action to Plaintiff and because Plaintiff's personal injury and negligence claims are preempted under the Act.

### 1.  Allegations of Spirit's Regulatory Noncompliance

Spirit characterizes Plaintiff's motion as requesting leave to add a *claim* related to Spirit's alleged violations of 14 C.F.R. § 253. Spirit is correct that the regulations at issue do not create a private right of action and that such a claim would thus likely fail as a matter of law. *See, e.g.*, *Shrem v. Sw. Airlines Co.*, 2017 WL 1478624, at *2 (N.D. Cal. Apr. 25, 2017) (collecting cases finding no private right of action exists under 14 C.F.R. §§ 253.4, 253.5, and 253.7). Plaintiff's motion and accompanying declaration, however, state that Plaintiff seeks to add *allegations* related to Spirit's noncompliance with regulatory notice requirements. Plaintiff asserts that these new allegations of Spirit's regulatory violations will "bolster the current breach of contract claim regarding statute of limitations and pre-emption."

With the proposed allegations of Spirit's regulatory noncompliance, Plaintiff apparently seeks to anticipate Spirit's defense to Plaintiff's breach of implied contract claim. Spirit argues in its motion that an express contract—the COC—exists and governs the parties' obligations. If the

COC governs, then Plaintiff is subject to the COC's provisions including, among others, provisions related to statute of limitations. Plaintiff, however, is not required to plead around Spirit's defenses or affirmative defenses to avoid dismissal. *Cf. U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972-73 (9th Cir. 2019); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). That is not to say that Plaintiff is prohibited from including these allegations in an amendment to her pleading absent prejudice to Spirit. Plaintiff's Amended Complaint presently contains allegations that Spirit "failed to provide Plaintiff with actual notice of the contract it claims governs the transaction and all terms of the contract including legal remedies, in violation of the Federal Deregulation Act, nullifying terms of the contract it claims governs." An amendment that merely clarifies the specific regulatory requirements concerning adequate notice cannot reasonably be said to cause prejudice to Spirit. Thus, Plaintiff may amend the Amended Complaint to specify the applicable regulations with which Plaintiff contends Spirit failed to comply, although she need not do so to avoid dismissal of her breach of contract claim.

### 2.  Claims for Personal Injury and Negligence

Plaintiff also requests leave to amend the Amended Complaint to assert new claims for personal injury and negligence against Spirit. Spirit opposes the proposed amendment, arguing that amendment would be futile because personal injury and negligence claims are preempted under the Act.

The Ninth Circuit in *Charas* noted that, although the Supreme Court's interpretations of the Act's preemption provision in *Morales* and *Wolens* "do not directly resolve whether the [Act's] preemption encompasses state law tort claims, they certainly suggest that such claims are not within the intended reach of the preemption." 160 F.3d at 1264. Moreover, the Ninth Circuit has concluded that "[n]othing in the Act itself, or its legislative history, indicates that Congress

had a 'clear and manifest purpose' to displace state tort law in actions that do not affect deregulation in more than a 'peripheral manner.'" *Id.* at 1265 (quoting *Morales*, 504 U.S. at 390); *see also Duncan v. Nw. Airlines, Inc.*, 208 F.3d 1112, 1115 (9th Cir. 2000) ("[T]he imposition of liability as a result of a personal injury action does not sufficiently interfere with the objectives of airline deregulation to warrant preemption of the action—in other words, the connection between an award in a tort case and an airline's 'services' is simply too tenuous.").

The Ninth Circuit in *Charas* highlighted two provisions of the airline regulatory statutes that support this conclusion. "First, airlines are still required to maintain insurance that covers 'amounts for which . . . air carriers may become liable for bodily injuries to or the death of any person. . . .'" 160 F.3d at 1265 (alterations in original) (quoting 49 U.S.C. § 41112(a)). If personal injury claims were completely preempted, then this requirement for insurance coverage would be "rendered pointless." *Id.* Second,

> the savings clause, [49 U.S.C. § 40120], which provides that "nothing in this chapter shall in any way abridge or alter the remedies now existing at common law," read together with the preemption clause, evidences congressional intent to prohibit states from regulating the airlines while preserving state tort remedies that already existed at common law, providing that such remedies do not significantly impact federal deregulation.

*Id.* (statutory citation alteration added, alterations in original omitted). The Ninth Circuit thus concluded that Congress "did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct." *Id*. at 1266.

Under Ninth Circuit precedent, the Act does not preempt Plaintiff's proposed personal injury claim. The Court has no trouble concluding that this precedent extends to the context of Plaintiff's proposed negligence claim as well. Neither of Plaintiff's proposed claims, nor those claims' remedies, would "significantly impact federal deregulation." *See id.* at 1265. District courts within the Ninth Circuit have reached this same conclusion in similar circumstances. *See,*

*e.g.*, *Makhzoomi v. Sw. Airlines Co.*, 419 F. Supp. 3d 1136, 1156 (N.D. Cal. 2019) (finding that, under *Charas* and *Newman*, the plaintiff's negligence claim based on denial of access to a flight was not preempted under the Act); *Chavez v. Fed. Express Corp.*, 2017 WL 784218, at *4 (S.D. Cal. Mar. 1, 2017) ("Under *Charas*, because the claims [do] not implicate things such as the frequency and scheduling of transportation, or the selection of markets, Chavez and Thompson's negligence cause of action is not preempted."). Spirit does not argue that it will suffer undue prejudice if the Court allows this amendment. Thus, considering the directive that a district court should apply Rule 15's "policy of favoring amendments with extreme liberality," *Price*, 200 F.3d at 1250 (cleaned up), the Court grants Plaintiff leave to amend her pleading. Plaintiff may amend her pleading to include a claim for personal injury or negligence, or both, if Plaintiff believes that she can sufficiently allege those claims.

## CONCLUSION

The Court DENIES Spirit's Second Motion for Judgment on the Pleadings (ECF 29), without prejudice to Spirit's right to file a motion for summary judgment at an appropriate time. The Court also GRANTS Plaintiff's Motion for Leave to Amend (ECF 34), and Plaintiff may file a second amended complaint not later than April 12, 2024.

**IT IS SO ORDERED**.

DATED this 28th day of March, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge